

ORDERED in the Southern District of Florida on January 9, 2015.

Erik P. Kimball, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                                          Case No. 14-28818-EPK

THORWALD A. BODENSIEK,                          Chapter 7

Debtor.
_____/

### ORDER GRANTING MOTION TO VALUE AND DETERMINE
### SECURED STATUS OF LIEN ON REAL PROPERTY

**THIS MATTER** came before the Court on December 10, 2014 for hearing on the *Motion to Value and Determine Secured Status of Lien on Real Property* [ECF No. 20] filed by the debtor in this case, Thorwald A. Bodensiek.  The motion is supplemented by a *Memorandum* filed at ECF No. 22.

Mr. Bodensiek alleges that his homestead real property, located at 1904 S.W. 17th Avenue, Boynton Beach, Florida, has a value of $84,001.00, that OneWest Bank (formerly Indymac Bank, FSB) holds a first mortgage in the amount of $191,856.53, and so there is no equity available for the second mortgage, also held by OneWest Bank (formerly Indymac Bank, FSB).  Mr. Bodensiek asks the Court to rule that the second mortgage of OneWest Bank be deemed void, or "stripped off", pursuant to *McNeal v. GMAC Mortgage, LLC*, 735

1

F.3d 1263 (11th Cir. 2012), leaving OneWest Bank with a wholly unsecured claim on account of its second mortgage. The secured creditor received appropriate notice of the motion and the hearing, did not file an objection, and did not attend the hearing.

Mr. Bodensiek filed a voluntary chapter 7 petition on August 21, 2014, which was accompanied by his initial Schedules of Assets and Liabilities and his Statement of Financial Affairs, among other forms. ECF No. 1. The chapter 7 trustee conducted a meeting of creditors on October 2, 2014. ECF No. 10. On the same date, the chapter 7 trustee filed a *Trustee's Report of Abandonment* regarding Mr. Bodensiek's real property at 1904 S.W. 17th Avenue, Boynton Beach, Florida, the property at issue in the present motion. ECF No. 12. The chapter 7 trustee's Report constitutes notice of abandonment under 11 U.S.C. § 554(a). Consistent with Local Rule 6007-1, the trustee's Report was served on all creditors and provided notice of the trustee's intent not to administer the subject real property. No party in interest objected to the proposed abandonment within the 14-day objection period provided in the local rule. In addition, on October 8, 2014, the chapter 7 trustee filed a report of no distribution. ECF No. 17. Under 11 U.S.C. § 554, the subject real property was confirmed abandoned to Mr. Bodensiek and deemed administered for purposes of this bankruptcy case.

It has been recently held in this district that a debtor may not strip off a wholly unsecured lien if the subject property was previously abandoned. *La Paz at Boca Pointe Phase 11 Condominium Ass'n, Inc. v. Brady*, 2014 WL 6908431, at *3-5 (S.D. Fla. Dec. 8, 2014).[1] The real property at issue in the present case was deemed abandoned before the filing of the motion now before the Court. The question here is whether the Court has the

---

[1] Although binding in the case in which it was entered, the cited order of the District Court has no precedential effect.

authority, under prevailing law, to strip off a wholly unsecured lien even if the property to which the lien attaches is no longer subject to administration in this case.

The primary argument against permitting such relief is based in the text of 11 U.S.C. § 506(a). Section 506(a) provides for the so-called bifurcation of a claim secured by a lien where the property subject to the lien has a value less than the amount of the claim. Such a claim is a secured claim to the extent of the value of the collateral (or the equity after taking account of senior liens), and is an unsecured claim for any remainder. The focus of the argument against permitting lien stripping on abandoned property is that section 506(a) applies only where the collateral is "property in which the estate has an interest." It is argued that the bankruptcy estate retains no interest in abandoned property, and so section 506(a) bifurcation does not apply. If section 506(a) does not apply, then the debtor may not take advantage of the lien voiding provision of section 506(d). Lien stripping on abandoned property would not be permitted. Under this analysis, property exempted from the estate under 11 U.S.C. § 522 and other applicable law, which is likewise not administered for creditors, also would not be subject to lien stripping.

In *Dewsnup v. Timm*, 908 F.2d 588 (10th Cir. 1990), the Tenth Circuit Court of Appeals addressed this issue head on. Reasoning that the question was a matter of simple statutory construction, the Tenth Circuit ruled that "abandoned property is not property in which the estate has an interest" and so "section 506(a) does not apply." *Id*. at 591.

The Supreme Court accepted certiorari in *Dewsnup*, ostensibly to consider the question addressed here. But the Supreme Court decided the matter on a different issue. *Dewsnup v. Timm*, 502 U.S. 410 (1992).[2] The fact that the Supreme Court affirmed the

---

[2] Until recently, it was widely thought that the analysis of the Supreme Court in *Dewsnup*, prohibiting the "strip-down" of a lien partially secured by property of the estate, prevented the seemingly parallel "strip-off" of a wholly unsecured lien. *McNeal*, 735 F.3d at 1265 (citing decisions within and outside the Eleventh Circuit). But the Eleventh Circuit has held the Supreme Court to

judgment of the Tenth Circuit gives no weight to the logic applied by the Tenth Circuit in its own ruling as the Supreme Court took another path to its conclusion.

In *Dewsnup*, Justice Scalia issued a dissent joined by Justice Souter. After questioning the tortured statutory construction applied by the majority, Justice Scalia addressed the issue originally presented to the court, whether section 506 applies to property abandoned by the bankruptcy trustee under section 554. After restating the argument that section 506(a) does not apply to abandoned property because the estate no longer has an interest in such property, Justice Scalia wrote as follows:

> The fallacy in this is the assumption that the application of § 506(a) (and hence § 506(d)) can be undone if and when the estate ceases to "have an interest" in property in which it "had an interest" at the outset of the bankruptcy proceeding. The text does not read that way. Section 506 automatically operates upon all property in which the estate has an interest at the time the bankruptcy petition is filed. Once § 506(a)'s grant of secured-creditor rights, and § 506(d)'s elimination of the right to "underwater" liens and liens securing unallowed claims have occurred, they cannot be undone by later abandonment of the property. Nothing in the statute expressly permits such an unraveling, and it would be absurd to imagine it. If, upon the collateral's abandonment, the claim bifurcation accomplished by § 506(a) were nullified, the status of the creditor's allowed claim – i.e., whether (and to what extent) it is "secured" or "unsecured" for purposes of the bankruptcy distribution – would be impossible to determine. Instead, the claim would have to be treated as either completely "secured" or completely "unsecured," neither of which disposition would accord with the Code's distribution principles. The former would deprive the secured claimant of a share in the distribution to general creditors altogether. See 11 U.S.C. § 726 (providing for distribution of property of the estate to unsecured claimants). The latter (treating the claim as completely unsecured) would permit the lienholder to share in the pro rata distribution to general creditors *to the full amount of his allowed claim* (rather than simply to the amount of the § 506(a)-defined "unsecured claim") while reserving his *in rem* claim against the security. Respondents' variation on the Tenth Circuit's holding avoids these alternative absurdities only by embracing yet another textual irrationality – asserting that, even though the language that is the basis for the "abandonment" theory (the phrase "in which the estate has an interest") is

---

its word, that *Dewsnup* is limited to the facts present there, and has re-stated the viability of prior Eleventh Circuit precedent, *Folendore v. United States Small Bus. Admin.*, 862 F.2d 1537 (11th Cir. 1989), which permitted lien stripping. *McNeal*, 735 F.3d at 1265-66. At present in the Eleventh Circuit, one may void a lien with no equity, but may not reduce a lien that is partly secured. It is difficult to harmonize these alternative outcomes with a single view of the statute.

4

> contained in § 506(a), and only applies to § 506(d) *through* § 506(a), nonetheless only the effects of § 506(d) and *not* the effects of § 506(a) are undone by abandonment. This hardly deserves the name of a theory.

*Dewsnup*, 502 U.S. at 432 (emphasis in original, footnote omitted). This logic is unassailable. The only reasonable interpretation of section 506(a) is that it is effective as of the petition date, and so the use of the present tense – "in which the estate has an interest" – means the petition date and not some later date when the court considers a motion to value. Any other interpretation would lead to a series of untenable results.

For purposes of the Court's analysis here, there is no difference between an asset that is abandoned and one that is claimed exempt. Both categories of assets are not available for administration by the estate. As with abandoned assets, one could argue that once an exemption is claimed the estate no longer has an interest in the subject property. Yet a debtor may amend his or her schedules, including the schedule of exempt assets, at any time before the case is closed. Fed. R. Bankr. P. 1009(a); *In re Allen*, 454 B.R. 894, 897 (Bankr. S.D. Fla. 2011).[3] Property initially not claimed as exempt, and thus available for distribution, may later be added to the list of exempt assets, making it not subject to administration. What becomes of a bifurcation or lien-stripping order entered in the meantime? How must the court address distributions made in reliance on such an order? Is the order void or voidable? The absurdity of these questions indicates the weakness of the argument.

Prior to the issuance of *Dewsnup* by the Supreme Court, the Third Circuit Court of Appeals explicitly permitted lien stripping on abandoned property. *Gaglia v. First Federal Sav. & Loan Ass'n*, 889 F.2d 1304 (3rd Cir. 1989). The analysis of the Third Circuit is

---

[3] In the Eleventh Circuit, there is presently an equitable limitation on this right. *Doan v. Hudgins (In re Doan)*, 672 F.2d 831, 833 (11th Cir. 1982). The *Doan* decision was recently called into question by the Supreme Court in *Law v. Siegel*, 134 S.Ct. 1188, 1196-97 (2014).

directly at odds with that of the Tenth Circuit in its decision in *Dewsnup* and is aligned with that of Justice Scalia's dissent in *Dewsnup*.[4]

In light of the decision of the Eleventh Circuit Court of Appeals in *McNeal*, permitting lien stripping, this Court adopts the reasoning of Justice Scalia, set out in *Dewsnup, supra*, and the reasoning of the Third Circuit Court of Appeals, set out in *Gaglia, supra*. This Court may grant a motion to value and strip liens under section 506 without regard to whether the collateral was, or might be, abandoned by the estate.

Lastly, the issue addressed here is not one of subject matter jurisdiction or the power of the bankruptcy court to issue a final order consistent with the requirements of Article III of the United States Constitution. The determination of a claim for purposes of bankruptcy, including whether and to what extent a claim is secured, is a matter that arises under Title 11 and falls squarely within federal bankruptcy jurisdiction. 28 U.S.C. § 1334(b). Bifurcation of claims and the determination of the status of liens under section 506 are at the center of the adjustment of the debtor-creditor relationship in bankruptcy. It is not just that such issues would "necessarily be resolved in the claims allowance process" – they *are* the claims allowance process. *See Stern v. Marshall*, 131 S.Ct. 2594, 2618 (2011). Motions seeking relief under section 506 are core matters subject to referral to the bankruptcy court for final orders. 28 U.S.C. § 157(b)(1). This chapter 7 case and the

---

[4] Although the Eleventh Circuit has not explicitly addressed the issue, both *Folendore* and *McNeal* indirectly support the conclusion reached here. In *Folendore*, the debtors had received their discharge and the Eleventh Circuit assumed that the subject property would be foreclosed. It appears that the property was not subject to administration. *Gaglia,* 889 F.2d at 1307 (stating that the facts in *Folendore* "suggested that the property was not subject to liquidation"). *McNeal* permitted lien stripping on the debtor's homestead, an exempt asset. *McNeal*, 735 F.3d at 1264-66; *see also Cole v. Fifth Third Bank, Inc. (In re Cole)*, 2014 WL 6455376, at *4-6 (Bankr. N.D. Ga. 2014) (noting the bankruptcy court's authority to exercise jurisdiction over previously abandoned property in order to grant debtor's motion to strip lien).

5

present motion are properly before this Court for final order pursuant to the standing order of reference in this district.[6]

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that:

1. The Motion [ECF No. 20] is GRANTED.

2. The value of the debtor's real property located at 1904 S.W. 17th Ave., Boynton Beach, Florida 33426, and more particularly described as Lot 9, Block 117 of Tenth Section, Palm Beach Leisureville, according to the plat thereof, as recorded in plat book 30, p. 129 of the Public Records of Palm Beach County, Florida (the "Real Property"), is $84,001.00 at the time of the filing of this case.

3. The total of all claims secured by liens on the Real Property senior to the lien of OneWest Bank, formerly IndyMac Bank, F.S.B. (the "Lender"), on account of its mortgage recorded at 20060315026 OR Book 20394 Page 1989 in the official records of Palm Beach County, Florida (the "Junior Mortgage"), is $191,856.53.

4. The equity remaining in the Real Property after payment of all claims secured by liens senior to the Junior Mortgage is $0 and on account of such Junior Mortgage the Lender has a secured interest in the Real Property in such amount.

5. Because Lender's secured interest in the Real Property on account of its Junior Mortgage is $0, Lender's Junior Mortgage (recorded at 20060315026 OR Book 20394 Page 1989 in the official records of Palm Beach County, Florida) shall be deemed void and shall be extinguished automatically, without further order of the Court, upon entry of the debtor's discharge in this chapter 7 case. If this case is converted to a case under any other

---

[6] For a complete discussion of bankruptcy jurisdiction and related Article III concerns, *see In re British American Ins. Co. Ltd.*, 488 B.R. 205 (Bankr. S.D. Fla. 2013).

chapter or if the chapter 7 case is dismissed, Lender's Junior Mortgage will no longer be considered void and shall be restored as a lien on the Real Property.

6. Lender has not filed a proof of claim in this case. The trustee shall not disburse any payments to Lender unless a proof of claim is timely filed. In the event a proof of claim is timely filed, it shall be classified as a secured claim in the amount stated in paragraph 4, above, and as a general unsecured claim for any amount in excess of such secured claim, regardless of the original classification in the proof of claim as filed.

7. The Real Property may not be sold or refinanced without proper notice and further order of the Court.

###

Copies Furnished To:

Christian S. Diaz, Esq.

*Christian S. Diaz, Esq. shall serve a conformed copy of this order on all appropriate parties and file a certificate of service with the Court.*